IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANNETTE PUCKETT (NOW KONIDIS)                               PLAINTIFF

V.                              NO. 12-5178

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Annette Puckett Konidis, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on September 25, 2009, alleging an inability to work since May 15, 2005, due to "Heart problems and sleep apnea." (Tr. 115-116, 122-124, 134,158). An administrative hearing was held on December 1, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 28-51).

By written decision dated January 27, 2011, the ALJ found that Plaintiff had an

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

-1-

impairment or combination of impairments that were severe - chronic obstructive pulmonary disease (COPD), hypertension, history of lumbar degenerative disc disease, history of chronic venous insufficiency (CVI), and obesity. (Tr. 16).  However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 17). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant should avoid concentrated exposure to such things as dust or fumes and hazards such as heights or open machinery.

(Tr. 18).  With the help of the vocational expert (VE), the ALJ determined that Plaintiff was capable of performing her past relevant work as a bookkeeper. (Tr. 22).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which, after considering additional evidence, denied that request on June 6, 2012. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**I.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or

AO72A
(Rev. 8/82)

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.     Discussion:**

Plaintiff raises the following issues on appeal: 1) Plaintiff has additional severe impairments; 2) The ALJ erred in determining Plaintiff's RFC; and 3) Plaintiff is not capable of returning to her past relevant work. (Doc. 11).

    **A.     Severe Impairments:**

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § § 1520(a)(4)ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cri. 1989). Plaintiff argues that the ALJ should have found her dysthymic disorder, cardiomegaly[2] and congestive heart failure to be severe impairments.

---

[2]Cardiomegaly - Enlargement of the heart. Stedman's Medical Dictionary 313 (28th ed. 2006).

In his decision, the ALJ determined that Plaintiff's dysthymic disorder, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, and was therefore non-severe. (Tr. 16). He considered and addressed the four broad functional areas for evaluating mental disorders, and concluded that Plaintiff had no limitation in her activities of daily living, social functioning and concentration, persistence or pace. (Tr. 16). He also found Plaintiff experienced no episodes of decompensation which had been of extended duration. (Tr. 16). The ALJ discussed in detail Plaintiff's daily activities, the consultative psychological examination of Sheldon T. McWilliams, Jr., Ph.D., performed on April 11, 2007, and the Psychiatric Review Technique Report completed by non-examining consultant Cheryl Woodson-Johnson, Psy.D. on November 14, 2009. (Tr. 17, 266-269, 335-347). In Dr. McWilliams report, he indicated that Plaintiff did not consider her current depression to be a contributing factor in her inability to work. (Tr. 266). Dr. McWilliams also gave Plaintiff a GAF score of 67. (Tr. 268). He found Plaintiff's capacity to communicate and interact in a socially adequate manner was within normal limits; her capacity to communicate in an intelligible and effective manner was good; her capacity to cope with the typical mental/cognitive demands of basic work-like tasks was poor; her ability to attend and sustain concentration on basic tasks was marginal; her capacity to sustain persistence in completing tasks was poor; and her capacity to complete work-like tasks within an acceptable time frame was also poor. (Tr. 268).

More recently, non-examining consultant Dr. Woodson-Johnson concluded that Plaintiff had no medically determinable mental impairment. (Tr.335). In so concluding, Dr. Woodson-Johnson noted that Plaintiff did not allege a mental impairment at this time and that she had a

"distant diagnosis of dysthymia by a CE vendor in 2007." She further noted that Plaintiff alleged problems related to insomnia for which she was being treated by her primary care physician with Trazadone as a sedative/hypnotic for sleep onset. She stated that there was no indication of psychiatric disturbance as the cause of her sleep deficits and that Plaintiff had no mention of psychiatric disturbance in her medical records. (Tr. 437). It is also noteworthy that Plaintiff did not allege any mental impairment in her application, which is significant. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).

  The ALJ also noted that Plaintiff stated that she could not afford outpatient treatment for her current depression. However, Plaintiff was able to afford to continue to smoke cigarettes during the time of her alleged disability.

  With respect to Plaintiff's cardiomegaly and congestive heart failure, on April 5, 2007, Dr. John Garrett conducted a General Physical Examination and found that Plaintiff's ranges of motion were all within normal limits and that she could perform all limb functions, except her grip was 90% and she could not squat and arise from a squatting position very well. (Tr. 256). He diagnosed Plaintiff with COPD, depression, sleep apnea (by history), and congestive heart failure (by history). There were no limitations listed in Dr. Garrett's report. On April 13, 2009, Dr. William J. Hayes, one of Plaintiff's treating physicians, referred to Plaintiff's history of congestive heart failure as "questionable," and noted that Plaintiff was still smoking ½ pack of cigarettes per day. (Tr. 278). He reported that Plaintiff was planning to begin a walking regimen soon, and he encouraged her to get support stockings, discussed the fact that losing weight would significantly help most of her medical problems, and that Plaintiff indicated she was planning to stop smoking soon. (Tr. 278-279). On October 5, 2009, Dr. Hayes reportedly encouraged

exercise and regular activity. (Tr. 273).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's determination of severe impairments.

**B.      RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

Plaintiff argues that in determining Plaintiff' RFC, he ignored Plaintiff's fatigue and sleepiness. On the contrary, the ALJ discussed the fact that Plaintiff did not drive because she reported that she was falling asleep at the wheel. (Tr. 16). The ALJ noted that Plaintiff's evidence did indicate fatigue, but nothing as severe as black outs. (Tr. 21).

In this case, the ALJ found Plaintiff had the RFC to perform sedentary work with certain limitations. In making this determination, the ALJ considered the medical records, observations

of treating physicians and others, and the claimant's own descriptions of her limitations.

As indicated earlier, Dr. Garrett, did not list any limitations in his report. (Tr. 258). In addition, on November 20, 2009, Dr. Jim Takach, a non-examining consultant, completed a Physical RFC Assessment, and found Plaintiff retained the ability to function at the sedentary level of exertion. (Tr. 352). He noted some postural and environmental limitations. (Tr. 353, 355). In addition, as noted by Defendant, the medical evidence included progress notes, treatment records, and psychological evaluation, for a treating period of over five years, and there was no indication in the entire body of medical evidence that Plaintiff's functional activities were ever restricted by any care provider.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination.

### C.    Past Relevant Work:

The ALJ found that Plaintiff would be able to perform her past relevant work as a bookkeeper. (Tr. 22). At the hearing, the ALJ asked the VE the following question:

> Q: Let's say we had an individual who's the same age, the same education, the same vocational history as this claimant who is limited to sedentary work as described by Commissioner as occasionally lift and carry ten pounds, frequently carry up to ten pounds, standing or walk about two hours in an eight-hour day and sit at least six hours in an eight-hour day, all with normal breaks. Let's say this individual further needed to avoid concentrated exposure to such things as dust or fumes and needed to avoid hazards such as heights or open machinery. Now, could such an individual do either of the jobs that the claimant's done in the past.?
> A: Judge, only the job of bookkeeper would be within these limitations that you've given here.

(Tr. 48-49).

AO72A
(Rev. 8/82)

Plaintiff's argument is based upon the position that the ALJ did not arrive at a proper RFC. However, as the Court has found there is substantial evidence to support the ALJ's RFC determination, Plaintiff's argument is without merit. In addition, the ALJ received testimony from a VE, who indicated that Plaintiff's past relevant work as a bookkeeper was classified as sedentary, skilled work (Tr. 48), which falls within the ALJ's RFC assessment.

The Court believes the hypothetical the ALJ proposed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). The Court further believes that the VE's responses to this hypothetical question constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing her past relevant work as a bookkeeper. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from VE based on properly phrased hypothetical question constitutes substantial evidence).

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 11th day of March, 2014.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)